Welcome Council, we'll call our first case, that's Cornerstone Residence Inc. v. City of Clairton. Good morning Your Honors, the pleas of the Court, my name is Donald Dreschel and I'm here on behalf of Cornerstone Residence Incorporated. If I may, I'd like to reserve two minutes of my time for rebuttal. To begin with, Your Honors, I'd like to respond to the question that was posed to Council on Friday regarding the application or the possible application of the Salerno Principle to a statutory facial challenge. Despite searching, I could not find a statutory facial challenge case. Would it make sense, though, to apply the same standard? No, I don't think it would, Your Honor. Why not? I think that, well, principally because there's a difference between a constitutional provision and a statutory provision. The statutory provision directly is focused on enforcing specific conduct. In this case, the Fair Housing Act, 42 U.S.C. 3615, provides that if any law permits conduct, any action that would be in violation of the Fair Housing Act, to that extent it shall be invalidated. It does not require that the law in all respects address or prevent discriminatory housing practices. The concept of facial means on its face. Yes. There can be no, you know, mistaking that all the applications have to be violative of the FHA. Wouldn't that be correct? Well, the facial challenge that we've brought here and is common under a Fair Housing Act is where the letter of the statute or ordinance, whatever it might be, is a discriminatory or allows a discriminatory housing practice. Whether or not it might have incidental effect on others who are not handicapped. But the concept of currently addicted, current addiction, can have different implications, can it not? It means currently addicted in a way that they're illegally using drugs versus recovering addicts, could it not? Absolutely. In one sense it would not violate the FHA and in another it would. Isn't that correct? Well, yes, there is an exception to the protection of the Fair Housing Act that anyone who is currently illegally using a controlled substance is not protected by the act. That is, I think, what the core of this case is about. Right. And as soon as you say, as you did a moment ago, that it could be applied in a discriminatory way, you also acknowledge that it could be applied in a way that's not discriminatory. No, I don't believe that that's the case in the context of this case. This ordinance cannot be read as pertaining to those who are currently using illegal drugs that was used in the past in an illegal manner. I'm not sure. Did you take issue with the district court's determination that the statute was unambiguous? Yes, yes. So you think there's ambiguity? Yes, yes. So if there's ambiguity, it can be read more than one way, right? Well, the exact term, current addiction, yes. But in context, though, I do not believe that it's ambiguous. Once you acknowledge that current addiction can be read in more than one way, don't you have to acknowledge that one of the ways it could be read is in a way that you're comfortable with and so it isn't facially invalid? That is correct, Your Honor. Current addiction, looking at it in an isolated way, could be current addiction and currently using, or current addiction and not currently using, dependent on a controlled substance but in recovery, addressing that dependency. Right. So help me out with the logic. If it's possible to read this statute in a way that even with your view of the world would not be discriminatory, how could it be facially invalid? Well, Your Honor, I don't think that that is the Slerna standard applies. And if I may continue to address that point, I think by certainly 36- To answer Judge Jordan's question, if you read it that way and you can read it both ways, how can it be facially invalid? It is facially invalid under 3615 in that it permits a discriminatory housing practice. That's where I think we're having trouble with your argument. Once you say it permits, you are acknowledging that if it's read in a certain way, it could go afoul. But usually when we talk about facial invalidity, it is because there's no way to apply the matter and still be consistent with the law. Here it appears that the ordinance goes out of its way to say, hey, we are trying to stay consistent with the law. It's even got the reasonable accommodation provision which says, you know, if you think we're out of line, come to the zoning board and we'll talk to you about that. If it's making all these steps to try to say we want to be consistent with the Fair Housing Act as amended, how do you get traction on an as-applied challenge? And I guess related to that, why didn't you pursue an as-applied challenge? We did, Your Honor. We pursued both an as-applied challenge and a facial challenge. But the as-applied challenge was right because you didn't exhaust your records. We didn't. We didn't. Once the – once Clarendon made clear that it was rejecting the application for the occupancy permit based on treatment center, and it wasn't clear initially, it did become clear that this was facially violative of the Fair Housing Act and that it excluded a category of disabled folks from a residential neighborhood. Can you draw a distinction between currently addicted and recovering addicts? No. No, I think currently addicted include recovering addicts. It may also include those who are illegally using. And HUD in its regulation applying the statute speaks to addiction as being a handicap that's protected under the Fair Housing Act except when there is current illegal use. It makes it clear that addiction, the clear implication of which is current addiction, present addiction, not past addiction, is protected by the Fair Housing Act so long as there is not current illegal use. But if you – couldn't Congress – or couldn't the ordinance have said recovering addicts if they wanted to include an entity like Cornerstone? Your Honor, I think that they – in effect they did say that. They said it by distinguishing or by stating immediately afterwards that was used in a legal manner. You're putting a lot of weight on was used. Yes. As compared to is being used. Because that language doesn't make sense if it's in connection with – that was used in an illegal manner. That doesn't make any sense to – How about looking at it the way the ADA does? Does the ADA provide us information that's worthwhile here in understanding what current use means? I don't think so, Your Honor. Aren't those statutes usually read in peri materia that there's a sense that these things are dealing with the same sorts of issues and they ought to be interpreted in the same manner? Yes. So why not now? Well, no, I take that back. I do think that there is some – first of all, addiction under Title VII ADA is also protected unless there is current illegal use. That's the focus of Congress. How about the ADA – yeah, correct. This is what we've said in – what we said in Sally in connection with the ADA. Current drug use means that the illegal use of drugs occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an ongoing problem. Right. But also in that statute, though, there is an express provision in the statute that does not allow a construction to exclude an individual who, even if they have recently been using a controlled substance, if they are in a supervised rehabilitation program, where the statute also allows other steps to assure that there is no current use, such as drug testing. Just working with the Sally language here. Right. If we're wrestling with what the meaning of current addiction means, and we've got precedent on our books from this Court that says under the ADA, current drug use means the illegal use of drugs that's occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an ongoing problem. Why isn't that enlightening or something we should be paying attention to when we look at the words current addiction in the Fair Housing Act? I think that the circumstance is different in an employment context than in a residential rehabilitation context. In an employment context, if someone is not currently in a supervised rehabilitation program where there is such things as drug testing, then, yes, they may present a danger on the work site. Why is that any less so in a residential setting? Why would the community be any less concerned about somebody living in their community or the people who are actually in the residence with the person? Why would they be any less concerned about safety? Because here we are, the context again, and what we're looking at here is what Clarendon meant by current addiction. The context here again is that this is specialized housing treatment and or counseling for those who need such housing because of current addiction that was used in an illegal manner or alcoholism. But what Judge Jordan just read, and you put that gloss on 1B, it really works because of all, you talked about context, because all of the other provisions, and they kind of signal that these people are not out of the woods yet. These people are still in a danger zone, if you will, and so we're going to put them in an industrial zone. It has methadone, it has criminal rehabilitation, and those people are kind of on the cusp, if you will, so that it would not be a recovery center, which would fit into the definition of group home. Doesn't that make sense looking at the context? I believe it would be a Title VII violation or an ADA violation if there was a bar of a prospective or an actual employee who was undergoing or involved in a supervised rehabilitation program with testing to assure that he's not currently taking drugs to exclude that person from the work site. The same thing here. The context here is that we have a supervised residential facility. If anyone uses drugs, they're not going to be in this facility, and the occupancy permit would be, should be revoked. It's the same context. So doesn't that fit then squarely within the definition of group home? Well, it doesn't. It could fit within the definition of group home, but for two things. One, the group home definition excludes those who are not predominantly elderly, and secondly, the group home definition specifically provides that. I'm sorry. It excludes. It excludes those who are predominantly 62 and no, it excludes those who are not predominantly 62 and older. Now, isn't age an alternative? Age, emotional, mental development, or physical disability. Isn't age an alternative? Well, that is not what the ordinance states. Incorporates Chapter 263 of the Claredon ordinances, which pertain to, require that the residents be predominantly 62 and older. I don't remember this being a feature in your brief. It is in my brief, Your Honor. That somehow there's an invalidity argument to be made based on age. No, no, we're not indicating that. We're simply saying that under the ordinance that this group of residents would not be able to reside in this dwelling. Unless they're 62 or older? Yes, or predominantly 62 and older, yes. Where is that? I'm looking at the ordinance. The ordinance, there is a reference in the ordinance to Chapter 263, and Chapter 263, which is another part of the Claredon ordinances, provides that residents need to be 62 and older. It also provides for physical components of the residents that are geared toward mobility-impaired individuals. So you're saying there's no provision for Cornerstone's home in the ordinance at all? No, I just think that they do also fit within a single-family dwelling definition, which is a permitted use in this medium-density zone. But if I could finish, Your Honor, the group home definition also states that if it is both a, or if it could be read that it is both a group home or a treatment center, then it must be a treatment center. It provides that if it is a treatment center, it is not a group home. The court below mixed that up. That's what I thought the argument was about. But let me ask you this. Are you still free to make an as-applied challenge? You had a rightness problem? Is that an option that's still available to you? Yes, I do think we could. And originally, yes, we have since. Right, I understand you. Actually, I understand you pursued it. But for reasons you don't have to get into, good and sufficient unto yourselves, you decided not to file the appeal with the board and not bring that to a right condition for legal action. But could you still do that? The answer is I take it you think you could. Could we still go before the zoning hearing? Which you need to do to have an as-applied challenge become right for you. Not only could we, but we have done that. Our goal is the most expeditious determination of this matter. It seems to me that you would have a good chance of success on that if your residence was protected by the FHAA. And so is it in process and is it about to be decided? I do believe that it is about to be decided. However, I think that that is independent of the matter before the court right now. Not really independent of the matter before the court. I mean, as a strictly legal matter, it may be independent. But, you know, there's a serious question about whether you folks should be talking about this case instead of litigating this case. Right? We've talked about this case, Your Honor. Do you think you've got an as-applied challenge which is in process and has a good chance of success? Well, there remains on the books here an ordinance which chills protected conduct. It has delayed for months the implementation of this particular residence. And I do think that just to finish on the Solano standard, I do think that this court's opinion in Lozano is directly applicable. In that case, this court did determine that Solano did not apply, even though there could be conjured up some factual situation whereby an actual conflict would not be presented. We'll hear you on rebuttal on that, all right, Mr. Driscoll? We've given you a little bit of extra time. We appreciate your answer on questions. We'll hear from Mr. Hansberry now and have you back in a few moments. Good morning, Your Honors. John Hansberry for the City of Clarendon. Let me start with a practical question, right out of the box. Tell us the state of play. Is there an as-applied challenge going on right now? What is the state of that claim? There is a state court action. Three different applications were filed. This suit here applies to application number one. Application number three is the subject of a state court proceeding in Allegheny County Court of Common Pleas. We argued a statutory appeal two weeks ago. And three is the as-applied challenge? Three is not an as-applied challenge, Your Honor. It is a deemed approval argument. The application there presents a little bit differently than this application. We were before Judge James. Yes, there are discussions between the parties. Is a group home excluded exclusively for people who are 62 or older? No, Your Honor, it's not. The court correctly read the provision of the zoning ordinance. I presume you were looking at JA Joint Appendix 115. There is no age limitation on it. It is an alternative feature. Why would this not be a group home? It could be a group home. Your Honor, no determination was ever made that this was a group home or a treatment center or otherwise. Well, it was made that it was a treatment center. It was rejected, not on the basis that it was a treatment center. The determination was made, Your Honors, by the building code official. This property had been vacant for a period of years. The building code official required that an engineer go and inspect and send a report. That report was sent. That was deemed to be a rejection, but it was not on the basis that it was. There was never a determination that this was a, quote-unquote, treatment center. And that is the argument, Your Honor, and the court below expressly addressed this in her opinion, that the basis of the position is Mr. McVicker's letter. The BCO official wrote a letter, and it did not relate to the determination that it was a treatment center. Your Honor, that would have been premature. This is an application that has gone through a series of iterations, and as the court found below, and it's the brief submitted by Mr. Driscoll, confirms that the, quote-unquote, decision that this was a treatment center is not based on anything that comes from the City of Clarendon. It is based on a conversation that this applicant had with the seller about a conversation that was allegedly had with the seller. Can you talk to us for a moment about the inclusion of alcoholism in this ordinance? Right. They raise it for the first time in their reply brief, query whether that's a forfeited argument because of that. Second, if it's not forfeited, why isn't that ordinance facially invalid on that basis alone? Okay. Your Honor, I agree that we have an argument that it is forfeited. On the merits, though, and as Judge Fisher carefully described the three legs of her analysis, the second leg moved past impairment, which would be alcoholism, to talk about impingement on a major life, a substantial impingement or limitation on a major life activity. This portion of the ordinance does not address that leg of a, quote-unquote, handicap at all. So on its face, the facial challenge fails. Why isn't it the case that if it includes, if by its terms, the FHA says that it's only illegal drugs which are excluded from the protection of FHA, and yet the ordinance says that current users of alcohol are forbidden. Right. Why is not that problematic for the ordinance just on its face? Right. I think that's, so there's a three-pronged analysis that Judge Fisher went through. The first prong being whether it identifies an impairment. So current use of a controlled substance, I think, is fatal on the- Current illegal use. Current illegal use is fatal on the illegal substance prong. Current use of alcohol is not fatal on that prong, and it could be problematic, except the treatment center definition does not go on to discuss the second prong of what a handicap is, and that is a substantial impairment on a major life activity. So this treatment center provision does not address a handicapped person on its face. It's just a current alcohol user, a current addiction of alcohol, with no discussion of whether there's an impairment on a substantial or major life activity. That person, a person who's a current alcohol user who has a substantial limitation, would fall under the group home definition because, as the court has rightly pointed out so far, that the group home definition expressly includes persons who are protected under the FHAA, and goes further to say, in subsection C, that a group home shall not include a treatment center. So as this is read in context- Well, help me out when you say, when this is read in context. Treatment center is a use, and then it goes on, this is on JA 124. Current addiction to a controlled substance that we use used in an illegal manner or alcohol. Correct. Current addiction to alcohol. Correct. Okay. If it defines that as a treatment center use, and maybe I'm just being obtuse, I'm not following your current impairment argument. Okay. If the treatment center says, hey, that's a use for people who are currently addicted to alcohol, and if treatment center and group home are defined by the ordinance to be mutually exclusive, as I understand them to be, so that if something could fit under both, it is a treatment center by definition under the ordinance. Right. Why aren't you in trouble, on a facial basis, for saying that somebody who's currently addicted to alcohol, that that's what a treatment center is for? Because I believe, Your Honor, that those two provisions describe two different people. The person in the treatment center would be somebody who's currently abusing alcohol or addicted to alcohol. The person in the group home would be a person who is currently addicted and has a substantial impairment of a major life function. Those are two different people. Well, then I'm still asking about alcohol, right? Right. Because the Fair Housing Act says that the addiction that's a problem, what you're not supposed to be doing is discriminating against people based on something. What's excluded is illegal drug use, not alcohol use. Correct. So because the county decides or the city decides, it wants to make a distinction between people who are impaired. Now, question whether somebody who's addicted to alcohol isn't by definition suffering in a problem with a life activity, right? Because the addiction, one would think, would affect those life activities. But leave that aside. Right. Just because Claritin says, well, we're going to make a distinction between people who are addicted to alcohol currently and people who are addicted to alcohol and have a limitation on a current life function. Because you choose to do that, why does that make a difference to the Fair Housing Act? The Fair Housing Act says the only people that are out from under our protection are people currently addicted to illegal substances. They don't put that gloss on it. So what is the difference if you put the gloss on it? I'll step back and try. I'm obviously not describing it well enough, and I apologize for that. To fall under the auspices and protection of the Fair Housing Act, a person must be disabled. And there are two prongs to that analysis, only one of which is described in Treatment Center. Our position is, and what the judge lower court found was, that does not describe, a current addict to alcohol does not describe a disabled person. Because there are plenty of functioning alcohol addicts in the workplace and in the world. Because there are, yes. I mean, I'm thinking if you think about addiction to drugs versus addiction to alcohol, there are a lot of highly functioning alcoholics, whereas drug use, perhaps by its nature, impairs? At least the first part of the argument, Your Honor. Yes, there are functioning alcoholics. And so the Treatment Center definition describes a person who clearly is currently using and addicted to alcohol, which on its own does not kick you in or out. It doesn't require a limitation on a life function. That's exactly it. To meet the definition of disability under the FHA. Let me ask you a practical question here. Yes. A use providing housing for three or more unrelated persons currently addicted to a controlled substance, so we have addicted, illegal users of drugs are housed together. Correct. Does that happen as compared to the cornerstones of the world where we have recovering people? Yes, I do think it is important. And I think if you go back to the top of that definition, if you look at Treatment Center, what we're talking about is specialized housing. For drug addicts, you take them off K&A and there's a house there for them. Correct. Really? Does that really happen as compared to recovering a la Cornerstone? Yes. And that's why in Clareton, a former mill town or a mill town on the Monongahela River, what they are trying to do in this R2 residential zone, we're talking about a former church and rectory. That's what we're talking about. And the rectory is right within a residential zone. And so the distinction is made that if you have active current addicts, that presents one kind of a risk. And they're not recovering. They are not in recovery. Well, I can see it presents a risk. My question was, I was not aware that there are such people that actually house and try to treat addicts. Because I don't know that you can get government funding or, I guess because they're not protected. Right. Who would have such a home? I'm just thinking it's a practical matter. Yes, they do exist. Can you answer the question about the standard for determining facial ability when we're looking at a statute? Right. The assertion is this is invalid as a statutory matter on its face. Right. As opposed to on the basis of some constitution. Right. So like Mr. Driscoll, we researched. We did not find any case applying the Salerno standard. But we do agree with the court. For Cornerstone to prevail here, they have to argue ambiguity. And by definition, ambiguity requires at least the possibility of one or two interpretations, one of which might be valid. So from our perspective, the Salerno standard makes sense. Let me ask you about a case, and I know I'm catching you on the fly here, that I was looking at. There's a case from 2007 called New Directions Treatment Services versus City of Reading. It's a 490F, 393, 2007 case. We said there the principal difference between the equal protection and ADA inquiry is that in and as applied for facial equal protection challenge, the plaintiff bears the burden of negating all conceivable rational justifications for the allegedly discriminatory action statute, whereas to make out a claim under the ADA, the plaintiff need only show that intentional discrimination was developed for a cause of the alleged discriminatory action. Now I realize there's a lot to unpack there, but is that saying that when you're dealing with the constitutional matter, you have to negate everything, but when you're dealing with the statute, you don't have to negate everything. All you have to show is there's intentional discrimination. That is, that there was an intent on the part of the cleric to do something wrong. Your Honor, I did see another case you're talking about, and I understand the point that that makes, and the answer is it might. That might be what that means, all of which I think puts us back into analyzing this particular treatment standard, treatment standard definition in the context of the group home definition, single family home definition, the reasonable accommodation provisions of the ordinance. You say the intent is clear that it's not violated. The intent is clear that there's no intention to violate. The intention is clearly to comply with, and the truth is if these are protected persons, if these people qualify as disabled persons under the FHA, there is a place for them in this R2 zoning district as a group home, and it's a conditional use. That's very clear. So sort of as a raw practical element here. And to get that conditional use, they'd have to do what? They would have to apply for a conditional use, which despite three attempts hasn't happened. They would have to go to the zoning hearing officer. Actually, they'd have to go through planning commission and then city council. So there's a route. There is a route. It has yet to be taken. Thank you. Your Honor, in addition to the new direction case, the case of Washington versus Davis soon after Title VII was passed distinguishes a statutory claim from a constitutional claim and indicates. Let's say we were with you on that. You don't have to negate every conceivable use. Instead, you have to show intentional discrimination. How have you done that? Because, Your Honor, in the way that this ordinance is written, you cannot read current addiction in the context that it is put in where there would be any valid use consistent with the Fair Housing Act. None. You're moving off of your assertion in your briefing that this is an ambiguous statute. No, Your Honor. You're saying it's unambiguous. I apologize, Your Honor, but I'm saying that current addiction in quotes, isolated, may be ambiguous. But it is not. When it is ambiguous, you read it in context. As the court in Community Services versus Wingap said, you look at the language, you look at it in context, and in context, there could be no use that would not be in violation of the Fair Housing Act. Answer Mr. Hansberg's point. He said, no. On the contrary, we've done everything we can to make it clear. And we've said, in the very language of the ordinance, we're trying to comply with the Fair Housing Act. We've got this special provision, redemption provision in there, and we've got a group home provision and a way to get a group home. Simply because they say that our intention is not to violate the Fair Housing Act cannot insulate it from its conduct. If there's any ambiguity in the statute and they're saying, please, please, trust us, we're trying to comply and interpret this in a manner that doesn't comply. I don't believe they are trying to comply, Your Honor, because they've provided for housing for the disabled, including group homes, personal care homes, assisted living in this residential zone, except for those disabled who are. He's just said that you could make a group home application. What's an error in his assertion? In our brief, we do. It's JA 161 and 162 where the ordinance does apply Chapter 263. Chapter 263 is included in our brief in the addendum, and in that it does provide that you must be or are predominantly 62 and older. Let me ask a question. Were you denied the zoning based on the fact that you are a treatment center? Yes. And that is a factual matter. This is a 12B6 motion. This is a motion to dismiss. As a factual matter, we have asserted in the complaint that Claredon officials explained to the seller this is a treatment center. It is not a permitted use. I mean, I can explain a lot of things. That's not a ruling. That's not a requirement. That's not an ordinance. It's not a determination by the zoning board. Have you been determined, has your use been determined to be that of a treatment center? The actual denial simply said this is not a permitted use. The reference in the argument opposing counsel that it was turned down because of some building code requirement is a post hoc rationalization that we addressed. We responded to their letter that some building code requirement needed to be met. It was met. It didn't make any difference. All right. Thanks, Mr. Driscoll. I'll ask counsel to stay there at table for just a moment. I'd like to speak to my colleague in just a moment. Okay.